**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAWN HALL, on behalf of herself and others similarly situated, | Civil Case No.: 22-cv-10193 |
| Plaintiff, | **COLLECTIVE ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CITY OF NEW YORK, | |
| Defendant. | |

Plaintiff Dawn Hall ("Hall" or "Plaintiff"), by and through her undersigned counsel, Faruqi & Faruqi, LLP, and on behalf of herself and others similarly situated, hereby alleges as follows against Defendant City of New York (the "City" or "Defendant"):

## NATURE OF THE CLAIMS

1.       The City staffs various employees across its mayoral agencies, the New York City Health and Hospitals Corporation, the Off-Track Betting Corporation, the New York City Housing Authority, the Office of the Comptroller, the District Attorneys' Offices, the Offices of Borough Presidents, the Public Administrators' Offices, museums, libraries, zoological gardens, and similar cultural institutions throughout the five boroughs.

2.       Thousands of these employees are subject to the "1995 - 2001 Citywide Agreement."

3.       Under this agreement, and in other ways, the City denies its employees overtime compensation.

4.     First, the City fails to include nightshift differentials of 10% when determining employees' regular rates of pay for the purposes of calculating overtime, thereby artificially depressing employees' overtime rates of pay.

5.     Second, the City defers overtime wages earned by employees as compensatory time.

6.     Generally speaking, this practice is lawful; however, the City banks employees' overtime wages as compensatory time at rates less than one and one-half times employees' regular rates of pay, thereby violating federal wage-and-hour laws.

7.     Third, the City unlawfully caps overtime compensation, again banking employees' wages at a straight-time rate, rather than an overtime rate, for work in excess of 40 hours in a workweek after they have met or exceeded the cap.

8.     In addition to the foregoing, the City also unlawfully treats compensable hours worked as "Non Compensable Hours," thereby further denying employees overtime compensation they are owed.

9.     Finally, the City routinely fails to pay employees on or before their regularly scheduled pay days, instead paying them anywhere from 19 to 33 days after their wages are due.

10.     To redress these wrongs, Plaintiff brings claims against Defendant under the Fair Labor Standards Act ("FLSA").

11.     Plaintiff brings her FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) and applicable regulations thereunder, on behalf of herself and all other similarly situated individuals employed by Defendant at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

12.     Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA.

13.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

### A.     Plaintiff Dawn Hall

14.     Hall is a resident of Brooklyn, New York and has been employed by Defendant from on or around May 21, 2018 through the present.

15.     At all relevant times, Hall is an "employee" of Defendant within the meaning of all relevant statutes and regulations.

### B.     Defendant City of New York

16.     Defendant is a municipal corporation that controls and oversees, *inter alia*, the operations of mayoral agencies, the New York City Health and Hospitals Corporation, the Off-Track Betting Corporation, the New York City Housing Authority, the Office of the Comptroller, the District Attorneys' Offices, the Offices of Borough Presidents, the Public Administrators' Offices, museums, libraries, zoological gardens, and similar cultural institutions throughout the five boroughs.

17.     At all relevant times, Defendant controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

18.     At all relevant times, Defendant established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, those concerning timekeeping, work allocation, task supervision, monitoring work product, calculation of overtime compensation, and payroll.

19.     At all relevant times, Defendant maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

20.     At all relevant times, Defendant has been an "employer" within the meaning of all relevant statutes and regulations.

## FACTS

**A.      Background and the Citywide Agreement**

21.     Defendant employs various full-time workers in mayoral agencies, the New York City Health and Hospitals Corporation, the Off-Track Betting Corporation, the New York City Housing Authority, the Office of the Comptroller, the District Attorneys' Offices, the Offices of Borough Presidents, the Public Administrators' Offices, museums, libraries, zoological gardens, and similar cultural institutions throughout the five boroughs—thousands of whom are subject to the "1995 - 2001 Citywide Agreement" ("Employees"), as discussed *infra* § B.  *See* Exhibit A ("Citywide Agreement").

22.     The Citywide Agreement governs, *inter alia*, Employees' work schedules, rates of pay, and payment of wages.  *See id.*

23.     Defendant pays Employees bi-weekly, with each period spanning two weeks.

24.     Employees' pay periods span from Sunday to Saturday.

25.     Defendant has established the Friday following each pay period as Employees' regularly scheduled payday.

26.     Employees' normal workweek typically spans from Monday through Friday; however, Employees regularly work on weekends and after their typical hours.

27.     As such, even if their normal workweeks span 40 hours or fewer, Employees typically work over and above 40 hours in a single workweek.

**B.     <u>Failure to Pay Overtime Pursuant to the Citywide Agreement</u>**

28.     Defendant engages in a common pattern and practice of failing to pay Employees the overtime they earn.

29.     As detailed below, Defendant denies overtime compensation to Employees in several ways, some of which are outlined in the Citywide Agreement.  *See id.*

**i.     Improper Calculation of Regular Rate for Payment of Overtime**

30.     Pursuant to the Citywide Agreement, Employees earn shift differentials of 10% for all scheduled hours worked between 6:00 p.m. and 8:00 a.m. ("Shift Differentials"), provided that the given Employee performs more than one hour of work during this timeframe.

31.     For Employees hired by Defendant after July 14, 1996, Shift Differentials are earned for work performed between 8:00 p.m. and 8:00 a.m., again provided that the given Employee performs more than one hour of work during this timeframe.

32.     The Shift Differentials are, as a matter of law, non-overtime premiums that must be included in Employees' regular rates of pay when calculating their overtime rates of pay (and, in turn, the amount of overtime compensation paid to them).

33.     Indeed, 29 C.F.R. § 778.207(b) plainly states, "[t]he Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials."  *See also* 29 U.S.C. § 207(e) (detailing various types of remuneration that should not be included in an employee's regular rate of pay, none of which applies to the Shift Differentials earned by Employees under the Citywide

Agreement); 29 C.F.R. §§ 778.201(b)-(c) (stating that only the premiums delineated in 29 U.S.C. §§ 207(e)(5)-(7) may be credited toward overtime compensation due, and that "[n]o other types of remuneration may be so credited"); 29 C.F.R. § 778.207(a) (same).

34.     This is because Employees earn Shift Differentials based on the time at which they perform work, rather than based on the number of hours previously worked during the same day or workweek.

35.     However, Defendant does not account for the higher rates of pay earned by Employees as Shift Differentials when calculating Employees' regular rates of pay for the purposes of determining their overtime compensation.

36.     In fact, the Citywide Agreement admits to this unlawful pay practice explicitly.  *See* Exhibit A at 3 ("[T]he shift differential shall be calculated separately from the overtime compensation.").

37.     Moreover, where an Employee earns a Shift Differential for work performed in excess of 40 hours in a single workweek, the Shift Differential is applied to the Employee's straight-time rate, rather than lawfully treating such work as overtime.

38.     This, too, is spelled out in the Citywide Agreement.  *See id.* at 5 ("Shift differentials . . . shall in all cases be computed on the individual employee's hourly rate of pay as determined in Section 6 of Article IV.").

**ii.     Unlawful Deferral of Overtime Compensation as Compensatory Time Paid at Less Than One and One-Half Times Employees' Regular Rates**

39.     Pursuant to the Citywide Agreement, Defendant pays Employees for certain overtime work by banking those hours as compensatory time, rather than paying them overtime wages. *See id.* at 5-7.

40.     While the FLSA authorizes this practice, any overtime wages that are banked as compensatory time must still be banked at a rate of one and one-half times an employee's regular rate of pay.

41.     Defendant fails to adhere to this legal requirement, instead banking compensatory time at less than one and one-half times Employees' regular rates of pay (*e.g.*, at a straight-time rate), even where Employees have worked more than 40 hours in a workweek.

42.     Further, Defendant fails to account for Shift Differentials earned by Employees when calculating their rates of pay for the accrual of compensatory time.

**iii.     Unlawful Cap on Overtime Compensation**

43.     The Citywide Agreement also sets caps on Employees' overtime compensation. *See id.* at 7-9.

44.     Specifically, the Citywide Agreement states: "When an employee's annual gross salary including overtime, all differentials and premium pay is higher than the cap, compensatory time at the rate of straight time shall be credited for authorized overtime[.]"  *See id.* at 8.

45.     In other words, where an Employee's total compensation exceeds the cap set by the Citywide Agreement, which varies year-to-year based on subsequent agreements amending the Citywide Agreement, the given Employee is not paid overtime compensation, even if he or she works more than 40 hours in a single workweek.

46.     Instead, the overtime compensation earned by Employees who meet or exceed the cap to their annual compensation is unlawfully credited as compensatory time at a straight-time rate.

**C.   Additional Overtime Violations by Unlawfully Treating Compensable Hours Worked as "Non-Compensable Hours"**

47.   In addition to the unlawful wage practices committed under the terms of the Citywide Agreement and Defendant's general practice of denying Employees overtime compensation, Defendant also treats certain overtime hours worked as "Non-Compensable Hours."

48.   Defendant determines whether to treat certain hours worked as non-compensable depending on if the overtime hours were approved prior to being worked, or under whatever other circumstances Defendant deems appropriate.

49.   Defendant classifies hours worked as non-compensable, irrespective of the nature of the work performed, including where the work was performed at the direction of a supervisor.

50.   Employees are entitled to be paid for all hours for which they suffered or were permitted to work; therefore, Defendant's policy or practice of classifying certain hours worked as non-compensable violates the FLSA.

**D.   Late Payment of Wages**

51.   As detailed above, Defendant pays Employees pursuant to a bi-weekly pay period spanning from Sunday to Saturday, and have established the Friday following each bi-weekly pay period as Employees' regularly scheduled pay day.

52.   While Defendant pays Employees straight time wages on time, Defendant does not pay overtime compensation until a full two-week pay period after the overtime work has been performed.

53.   By way of illustration, if an Employee works overtime during a pay period spanning from September 5, 2022 through September 17, 2022, the Employee will not receive payment for such overtime work until October 6, 2022.

54.     Thus, Employees are not paid for such overtime work on the Friday following the pay period in which the work is performed; rather, they are paid for such work two Fridays thereafter.

55.     Put differently, Employees are not paid for overtime work until nearly three weeks after the pay period in which the work is performed.

56.     This results in overtime wages being paid anywhere from 19 to 33 days after they are earned by Employees.

57.     This, of course, does not account for overtime compensation being denied entirely, as outlined *supra*.

58.      As a result of Defendant's failure to timely pay Employees, Employees suffer concrete harm.

59.     Specifically, each pay period, Employees are: (i) deprived of money to which they have a right, thereby costing them the time value of their money; (ii) deprived of the opportunity to invest their money; and/or (iii) otherwise unable to use their wages to pay bills and satisfy other financial obligations.

**E.     Plaintiff Dawn Hall**

60.     Hall works for Defendant as a Construction Project Manager in the New York City Department of Housing Preservation & Development ("HPD").

61.     Defendant pays Hall pursuant to a bi-weekly pay period spanning from Sunday to Saturday, with payment due the following Friday, her regularly scheduled pay day.

62.     Hall is regularly scheduled to work ten shifts of eight hours each, for a total of 35 hours each workweek and 70 hours every two-week pay period.

63.     Hall is typically scheduled to work from 8:00 a.m. to 4:00 p.m. (eight hours) or 7:30 a.m. to 3:30 p.m. (eight hours).

64.     While Hall's normal workweek spans fewer than 40 hours, she often works over 40 hours in a single workweek as required by Defendant.

65.     Defendant pays Hall under the terms of the Citywide Agreement.

66.     Defendant characterizes Hall's compensation as a "salary;" however, in fact, Hall is paid on an hourly basis, with her annual compensation varying based on the amount of overtime she works and the amount of work for which she receives Shift Differentials.

67.     Throughout Hall's employment, Defendant consistently fails to include Shift Differentials in her regular rate of pay when calculating her overtime compensation.

68.     For example, on July 28, 2020, Hall performed more than one hour of compensable work prior to 8:00 a.m., having clocked in at 6:56 a.m.  *See* Exhibit B.

69.     Instead of applying Hall's Shift Differential for this time worked, Defendant paid Hall at the same rate for all hours worked during that pay period.  *See* Exhibit C.

70.     Defendant not only failed to apply Hall's Shift Differential, but also banked her compensatory time at a straight time rate, rather than at her overtime rate.  *See id.*

71.     Further, Defendant consistently denies Hall overtime compensation by deferring wages for her overtime work as compensatory time paid at less than one and one-half times her regular rate of pay.

72.     By way of example only, during the pay period spanning from August 2, 2020 through August 15, 2020, Hall worked a total of 68.5 hours during the first workweek, and 73 hours during the second workweek.  *See* Exhibit D.

73.     In other words, Hall worked 61.5 hours of overtime in total.  *See id.*

74.     However, Defendants paid Hall only 12.75 hours of overtime during the same pay period.  *See* Exhibit E.

75.     Further, Defendants gave Hall only 32.75 hours of compensatory time.  *Compare id.* (reflecting a compensatory time balance of 689.75 hours) *with* Exhibit F (pay stub from the previous pay period reflecting a compensatory time balance of 657 hours, thus indicating a 32.75 increase from the first pay period to the second); *see also* Exhibit D (timesheets showing that Hall did not use any of her banked compensatory time during the pay period spanning from August 2, 2020 through August 15, 2020).[1]

76.     Given that Hall was paid 12.75 hours of overtime wages out of her 61.5 overtime hours worked, she was entitled to receive 73.25 hours of compensatory time—*i.e.*, more than double the 32.75 hours she actually received in compensatory time.[2]

77.     Defendant also fails to compensate Hall for certain hours worked by unlawfully treating compensable work as "Non-Compensable Hours."

78.     For example, during the same pay period spanning from August 2, 2020 through August 15, 2020, Defendants treated 14.25 of Hall's hours worked as "Non-Compensable."  *See* Exhibit D.

79.     Finally, Defendant consistently fails to pay Hall's overtime compensation on or before the regularly scheduled pay day following the week in which she performed the work, instead paying Hall anywhere from 19 days to more than one and one-half years late.

---

[1] As reflected in other timesheets, Hall's use of compensatory time is noted in timesheets for the applicable workweek whenever compensatory time is used.  However, no use of compensatory time is noted in Exhibit F, as no compensatory time was used.

[2] 61.5 - 12.75 = 48.75; 48.75 * 1.5 = 73.125 (rounded up to 73.25 in accordance with Defendant's time rounding practice, which rounds hours worked to the nearest quarter-hour).

80.     Indeed, Hall's paystubs reflect that her overtime compensation was either paid or banked as compensatory time two pay periods after she performed the overtime work.  *See* Exhibit G (summary of overtime payments generated by Defendant reflecting payment of overtime compensation anywhere from 19 days to more than one and one-half years after it was earned).

## FLSA COLLECTIVE ACTION ALLEGATIONS

81.     Plaintiff brings her FLSA claims as a collective action on behalf of herself and all other similarly situated persons who have been employed by Defendant as Employees (*i.e.*, individuals subject to the Citywide Agreement) any time during the full statute of limitations period (the "FLSA Collective").

82.     At all relevant times, Plaintiff and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendant's practices of: (i) unlawfully denying them overtime compensation; and (ii) failing to pay their overtime wages on their regularly scheduled pay day.

83.     At all relevant times, Defendant has been fully aware of the job duties performed by Plaintiff and the FLSA Collective, and that those job duties are not exempt from the overtime provisions of the FLSA.

84.     Defendant's violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiff and the FLSA Collective.

85.     As a result of Defendant's conduct, Defendant is liable to Plaintiff and the FLSA Collective for the full amount of their unpaid overtime wages, plus an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs incurred by Plaintiff and the FLSA Collective.

86.     While the exact number of individuals who comprise the FLSA Collective is unknown to Plaintiff at this time, upon information and belief, there are approximately 500,000 other similarly situated persons who were employed by Defendant as Employees during the full statute of limitations period.

87.     Plaintiff is currently unaware of the identities of the members of the FLSA Collective.

88.     Accordingly, Defendant should be required to provide Plaintiff with a list of all persons employed by Defendant as Employees during the full statute of limitations period, along with each Employee's last known address, telephone number, and email address, so that Plaintiff can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME

89.     Plaintiff, on behalf of herself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

90.     During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C. §§ 201, *et seq.*, and applicable regulations thereunder.

91.     The FLSA requires covered employers, including Defendant, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

92.     Plaintiff and the FLSA Collective were not exempt from the requirement that their employer pay them overtime wages under the FLSA, and they are entitled to be paid overtime by Defendant for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

93.     During the statute of limitations period, Defendant has engaged in a policy and practice of failing to compensate Plaintiff and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

94.     Defendant has denied Plaintiff and the FLSA Collective overtime wages by, *inter alia*: (i) failing to include Shift Differentials in Plaintiff's and the FLSA Collective's regular rates of pay when calculating overtime compensation; (ii) failing to bank all overtime hours worked as compensatory time at a rate of one and one-half times Plaintiff's and the FLSA Collective's regular rates of pay; (iii) capping overtime compensation; and (iv) treating compensable work as non-compensable.

95.     As a result of Defendant's failure to compensate Plaintiff and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendant has violated the FLSA and/or applicable regulations thereunder.

96.     Defendant has acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA.

97.     Defendant's violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: LATE PAYMENT OF WAGES**

98.     Plaintiff, on behalf of herself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

99.     During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C. §§ 201, *et seq.*, and applicable regulations thereunder.

100.    The FLSA requires covered employers, including Defendant, to pay employees all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

101.    Moreover, pursuant to 29 C.F.R. § 778.106, "overtime compensation earned in a particular workweek must be paid on the regular payday for the period in which such workweek ends."

102.    Plaintiff and the FLSA Collective were not exempt from the requirement that Defendant timely pay them their wages.

103.    During the statute of limitations period, Defendant has engaged in a policy and practice of failing to pay Plaintiff and the FLSA Collective all overtime compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

104.    As a result of Defendant's failure to pay Plaintiff and the FLSA Collective all overtime compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, Defendant has violated the FLSA and/or applicable regulations thereunder.

105.    Defendant has acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA.

106.    Defendant's violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the FLSA Collective, respectfully requests that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal law;

B.    Grant an injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C.    Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendant to provide Plaintiff with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.    Determine the damages sustained by Plaintiff and the FLSA Collective as a result of Defendant's violations of the FLSA, and award those damages against Defendant and in favor of Plaintiff and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

E.    Award Plaintiff and the FLSA Collective an additional equal amount as liquidated damages;

F.    Award Plaintiff and the FLSA Collective their reasonable attorneys' fees and costs incurred in their pursuit of this action including, without limitation, expert witness fees; and

G.    Grant Plaintiff and the FLSA Collective such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the FLSA Collective, hereby demands a trial by jury on all issues of fact and damages.

Dated:  December 1, 2022          **FARUQI & FARUQI, LLP**
New York, New York

By: *  /s/ Alex J. Hartzband* _____
Alex J. Hartzband
Camilo M. Burr
Annabel R. Stanley

685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
ahartzband@faruqilaw.com
cburr@faruqilaw.com
astanley@faruqilaw.com

*Attorneys for Plaintiff and the*
*Proposed FLSA Collective*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAWN HALL, on behalf of herself and others similarly situated, | Civil Case No.: |
| Plaintiff, | |
| v. | |
| CITY OF NEW YORK, | |
| Defendant. | |

## <u>CONSENT TO SUE</u>

I, Dawn Hall, have been employed by Defendant within the last three years.  I hereby consent to sue Defendant as the named Plaintiff in the above-captioned action, *Dawn Hall v. City of New York*, pending in the United States District Court for the Southern District of New York.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, New York 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): Dawn Hall _____

Signature: _DocuSigned by: Dawn Hall_ _____   Date: 12/01/2022 _____
DA65234C018346A

1