```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6/30/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAWN HALL, et al.,

                Plaintiff,

      -against-

CITY OF NEW YORK,

                Defendant.

---

22-CV-10193 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge**.

      The Court has received and reviewed an unopposed letter-motion, dated June 5, 2025 (Ltr. Mot.) (Dkt. 109), filed by plaintiff Dawn Hall on behalf of herself and 33 additional opt-in plaintiffs, seeking approval, pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), of the Settlement Agreement and Release (Agreement) (Dkt. 109-2) executed by Hall and defendant City of New York (City) on June 4, 2025, which will resolve plaintiffs' Fair Labor Standards Act (FLSA) claims against the City. For the reasons that follow, the motion will be granted.

<u>Background</u>

      Hall worked as a Construction Project Manager at the New York City Department of Housing Preservation and Development (HPD). In her Collective Action Complaint (Compl.) (Dkt. 1), filed on December 1, 2022, she alleged that the City violated the FLSA by, among other things, "banking" her overtime hours at a straight time rate rather than at time-and-a-half, *see* Compl. ¶¶ 39-41, 70-71; designating certain overtime hours worked as "non-compensable," including meal breaks, *see id*. ¶¶ 47-49; and failing to pay overtime wages timely. *See id*. ¶¶ 51-56. She further alleged that thousands of other City employees were subject to the same unlawful pay policies, some of which were enshrined in the 1995-2001 Citywide Agreement between the City and District Council 37, AFSCME, AFL-CIO. *Id*. ¶¶ 1-3, 21, 28-46, 86 (estimating that

"approximately 500,000 other similarly situated persons" were employed by the City "during the full statute of limitations period").

On September 28, 2023, the Court conditionally certified an FLSA collective limited to "all Construction Project Managers employed by HPD since December 2, 2019." (Dkt. 40 at 1-2, 30-31.) Ultimately, 33 additional plaintiffs opted in to this action pursuant to 29 U.S.C. § 216(b), agreeing to be bound by any judgment entered or settlement reached with respect to their FLSA claims. (Dkts. 10, 49-52, 56-59, 62-63, 65-71, 83.)[1]

After the parties engaged in "voluminous" written discovery, Ltr. Mot. at 2, they participated in a formal mediation before an experienced wage and hour mediator, followed by approximately seven and a half months of bilateral settlement negotiations. *See id*. at 2-3. On April 16, 2024, they advised the Court that they had reached a settlement. (Dkt. 101.) Thereafter, the parties consented to my jurisdiction for all purposes. (Dkt. 104.) On April 30, 2025, I issued a scheduling order (4/30/25 Order) (Dkt. 106) governing their anticipated motion for approval of the settlement pursuant to *Cheeks* and its progeny. On June 5, 2025, plaintiffs filed the instant letter-motion, supported by the declarations of attorney Camilo Burr (Burr Decl.) (Dkt. 109-1) and plaintiff Dawn Hall (Hall Decl.) (Dkt. 109-7).

### The Settlement Agreement

Under the Agreement, the City will pay a total of $800,575.25 (the Settlement Sum) to settle plaintiffs' FLSA claims. *See* Ag. § II(A)(1). From that sum will be deducted: (1) attorneys' fees, to be paid to plaintiffs' counsel Faruqi & Faruqi (F&F) in an amount no greater than $266,858.42 (1/3 of the gross settlement amount); (2) reimbursement of counsel's "reasonable and

---

[1] A 34th opt-in plaintiff later withdrew from the case, and her consent-to-join form was stricken. (Dkts. 54, 85.)

actual costs and expenses," in an amount no greater than $17,141.58; (3) a service award of $15,000, to be paid to the lead plaintiff, Hall, for her time and effort expended to pursue this action and secure the settlement; and (4) a fee of $2,500, to be paid to Analytics LLC (Analytics), retained by plaintiffs' counsel as Claims Administrator. *See* Ag. §§ II(A)(2)-(4); Ltr. Mot. at 9-14. After these payments, the "Net Allocation Fund" will be distributed to the plaintiffs based upon a formula (the Settlement Allocation Formula) that takes into account each plaintiff's actual compensation, payroll, and time records during the relevant time period. *See* Ag. §§ II(A)(5), II(B)(1)-(2).

If the Court approves the full amount of the attorneys' fees, expense reimbursement, service fee, and Claims Administrator fee set forth in the Agreement, the Net Allocation Fund will be $499,075.25. *See* Ag. Ex. B. If the Court does not approve the full amount of the requested attorneys' fees, expense reimbursement, or service fee, any unapproved portion will "become part of the Net Allocation Fund," *id*. §§ II(A)(2)(iii), II(A)(3)(iii), thus increasing each plaintiff's settlement payment.

## **Fairness**

Plaintiffs calculate their "maximum possible recovery" to be $1,161,006.91, including "all unpaid overtime wages, liquidated damages, and damages stemming from Defendant's alleged late payment of wages." Ltr. Mot. at 2, 6; Burr Decl. ¶¶ 52-61. The Settlement Sum represents a robust 69% of this amount, which – as plaintiffs point out, *see* Ltr. Mot. at 3-4 – exceeds, on a percentage basis, recoveries approved as fair and reasonable in numerous FLSA cases litigated in this Court. *See also*, *e.g*., *Khan v. Dunwoodie Gas Station, Inc.*, 2020 WL 1166180, at *3 (S.D.N.Y. Mar. 10, 2020) ("Precedent confirms that securing two-thirds of a potential total recovery is generally deemed fair, reasonable, and adequate.").

3

In this case (as in most FLSA actions) there is no guarantee that plaintiffs would recover their "best-case" damages at trial. For example, the City continues to dispute whether plaintiffs worked during their meal breaks; how many hours they spent performing compensable work; and whether it can be held liable under the FLSA for any delays in overtime payments, given that the payments were made "as soon as administratively feasible and reasonably practical under the circumstances." Ltr. Mot. at 5; *see also* Burr Decl. ¶¶ 44-46, 64. I therefore find that the Settlement Sum is fair and reasonable in light of, among other things, the degree of success obtained, "the fact-intensive nature of the claims, and the risk that Defendant might potentially prevail on all, or at least some, of its defenses." Ltr. Mot. at 6.

The Settlement Allocation Formula is also fair. Under that formula, each plaintiff will receive a payment expressed as a percentage of the Net Allocation Fund, calculated "by dividing the total amount allegedly owed to [that] Plaintiff by the total amount owed to all Plaintiffs." Ag. § I(BB). According to plaintiffs' calculations, individual settlement payments will range from $117.48 to $62,245.66 (assuming that the Net Allocation Fund is $499,075.25). *Id*. Ex. B.

The service payment to plaintiff Hall is unobjectionable, given not only the time and effort she put in to pursue this action, *see* Hall Decl. ¶¶ 3-27, but also the risks she took in doing so while still employed at HPD. The extra $15,000 represents less than 2% of the Settlement Sum, which is "'well within the range of service awards recently approved in the Southern District of New York' in FLSA cases." *Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *2 (S.D.N.Y. Mar. 24, 2016) (Nathan, J.) (quoting *Mills v. Capital One, N.A.,* 2015 WL 5730008, at *18 (S.D.N.Y. Sept. 30, 2015)); *see also Chodkowski v. Cnty. of Nassau*, 2021 WL 3774187, at *4 (E.D.N.Y. Aug. 25, 2021) (approving service awards of $140,000, representing 4.6% of the total settlement amount).

Finally, the non-economic terms of the Agreement are fair. I note in particular that there is no confidentiality clause or non-disparagement obligation, *see* Ltr. Mot. at 8, and that the parties will exchange releases limited to wage claims under the FLSA. Ag. § II(K)(1)-(2). This will leave plaintiffs free to (among other things) "seek relief provided for in a collective bargaining agreement." Ag. § II(K)(3).

In addition to providing a fair recovery to the plaintiffs, the parties' settlement will allow both the plaintiffs and the City to avoid the expense, delay, and inherent risks of trial. Further, the settlement was reached only after an all-day mediation session before an experienced neutral, followed by extended arm's-length negotiations between the parties' equally experienced attorneys, who specialize in wage and hour litigation. *See* Ltr. Mot. at 7-8; Burr Decl. ¶¶ 22-24, 67. There is no suggestion in the record that the settlement was the product of fraud, coercion, or collusion.

Under these circumstances, the Court concludes that the Agreement satisfies the factors set forth in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012), and represents "a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Perossio v. Pure Growth Consulting, LLC*, 2023 WL 1368002, at *2 (S.D.N.Y. Jan. 31, 2023) (quoting *Mamani v. Licetti*, 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014)).

## Fees and Expenses

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) ("In an FLSA case, the Court must independently ascertain the reasonableness of the fee request.") (citation omitted). The "most critical factor" in determining the reasonableness of a fee award is

"the degree of success obtained." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Subject to that directive, "[i]t is within a court's discretion whether to award attorneys' fees based on either the lodestar method or the percentage of the settlement fund." *Reinoso v. Cipriani*, 2019 WL 2324566, at *2 (S.D.N.Y. May 30, 2019) (collecting cases).

Here, plaintiffs seek a fee award to F&F of $266,858.42 (1/3 of the gross settlement amount), plus reimbursement of the firm's "reasonable and actual costs and expenses" in the amount of $17,141.58, plus reimbursement of the Claims Administrator's fee, amounting to $2,500. *See* Ag. §§ II(A)(2)-(4); Ltr. Mot. at 9-14. In support of these requests, plaintiffs submit biographical information concerning the F&F attorneys and other timekeepers who worked on this action (Dkt. 109-3); F&F's detailed time records (Dkt. 109-5), reflecting a lodestar of $503,221.50 (at hourly rates ranging from $185 for support staff to $625 for one of the firm's partners) (Dkt. 109-4); and an invoice for $2,500 from the Claims Administrator (Dkt. 109-6). However, plaintiffs did not submit any support for their request for $17,141.58 in additional expenses, notwithstanding this Court's direction that they do so. *See* 4/30/25 Order at 2 ("Any proposed award of fees and costs must be memorialized in the written settlement agreement . . . and supported by copies of counsel's . . . time *and expense records*, properly authenticated") (emphasis added); Burr Decl. ¶¶ 91-92 (attesting in conclusory terms that F&F incurred "considerably more than $17,141.58 in actual costs and expenses," but providing no further detail and attaching no bills, invoices, receipts, or other records reflecting the claimed expenses).

Courts in this Circuit routinely approve one-third contingency fees for FLSA cases. *See*, *e.g.*, *Fisher*, 948 F.3d at 602 n.8 (collecting cases); *Singh v. MDB Construction Mgmt., Inc.*, 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate").

6

Given the robust recovery in this action – and the fact that the requested award is substantially less than counsel's lodestar – the Court finds the fee request reasonable. The $2,500 fee to the Claims Administrator is also reasonable, and supported by an Analytics invoice. However, plaintiffs failed to document any of the additional expenses for which they request reimbursement, as required by the 4/30/25 Order and by well-settled precedent in our Circuit. *See Fisher*, 948 F.3d at 601-02 (approving expenses to the extent "documented . . . in the receipts and invoices submitted by counsel"); *Barsa v. Beacon Health Options, Inc.*, 2020 WL 7240346, at *6 (S.D.N.Y. July 10, 2020) ("Expenses must also be documented."); *Callari v. Blackman Plumbing Supply, Inc.*, 2020 WL 2771008, at *17 (E.D.N.Y. May 4, 2020) (recommending that no expenses beyond the filing fee be awarded where counsel "fail[ed] to provide the underlying documentation such as invoices, receipts or other documentary proof"), *adopted,* 2020 WL 2769266 (E.D.N.Y. May 28, 2020). Consequently, the Court approves the request for $266,858.42 in attorneys' fees and $2,500 for the Claims Administrator as fair and reasonable, but cannot approve the additional $17,141.58 sought for counsel's fees and expenses. As a result – according to the terms of the Agreement – the Net Allocation Fund will be $516,216.83, *see* Ag. §§ II(A)(2)(ii), (iii), and the extra $17,141.58 will be distributed, pro rata, to each settling plaintiff in accordance with the Settlement Allocation Formula. *Id.* §§ I(BB), II(A)(5), II(B)(2).

## Conclusion

Having carefully reviewed the economic and non-economic terms of the Agreement, the Court concludes that they are fair and reasonable as required by *Cheeks*, 796 F.3d 199. For the reasons set forth above, the Court cannot approve the reimbursement of undocumented litigation costs and expenses in the amount of $17,141.58. However, because the Agreement anticipates this possibility, and self-adjusts – by making the unapproved expense reimbursement "part of the Net

Allocation Fund," *see* Ag. § II(A)(2)(iii) – the Court is not required to reject the parties' settlement altogether. *Cf. Fisher*, 948 F.3d at 607. Instead, the Court GRANTS plaintiffs' letter-motion (Dkt. 109); APPROVES the settlement (including the proposed form of notice, *see* Ag. Ex. A), as adjusted in accordance with this Order; and DISMISSES this action. As requested, *see* Stip. & Prop. Order (Dkt. 110), the Court will retain jurisdiction for the limited purpose of enforcing the settlement terms.

       The Clerk of Court is respectfully directed to close the case.

Dated: New York, New York           **SO ORDERED.**
       June 30, 2025

                                 **BARBARA MOSES**
                                 **United States Magistrate Judge**